IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIERRA CLUB<br>85 Second Street, Second Floor<br>San Francisco, CA 94105-3441<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, and<br>LISA P. JACKSON, in her official capacity as Administrator,<br>United States Environmental Protection Agency<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.  This is an action to compel the Administrator of the United States Environmental Protection Agency ("Administrator" or "EPA") to perform certain nondiscretionary duties mandated by the Clean Air Act ("the Act") to cure recognized deficiencies in the State of Texas's implementation, maintenance, and enforcement of revised National Ambient Air Quality Standards ("NAAQS") for ozone and fine particle pollution ("PM2.5"). Specifically, this action seeks to compel EPA to promulgate overdue federal implementation plans ("FIPs") for Texas that satisfy the Act's requirements for limiting interstate air pollution and implementing, maintaining, and enforcing revised national ozone standards within the State. This action further seeks to compel the Administrator to take final approval or disapproval action on Texas's previously submitted state implementation plan ("SIP") for implementation, maintenance, and

enforcement of revised NAAQS for PM2.5.  EPA's failure to perform these duties violates controlling and explicit deadlines set forth in the Act, and thereby deprives Plaintiff's members of health, welfare, and procedural protections required by the Act.

## JURISDICTION AND VENUE

2.  The instant action arises under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*.  This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604, and 28 U.S.C. §§ 1331 and 1361.  The relief requested herein by Plaintiff is authorized pursuant to 42 U.S.C. §§ 7604, and 28 U.S.C. §§ 2201, 2202, and 1361.

3.  In accordance with 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54, Plaintiff served prior notice on the Administrator of the violations alleged herein and Plaintiff's intent to initiate the present action.  This notice was provided via certified letter, posted June 2, 2010, and addressed to the Administrator.  More than 60 days have passed since the notice was served pursuant to 42 U.S.C. § 7604(b), and the violations complained of in the notice are continuing.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendant Lisa P. Jackson is an officer of the United States sued for acts and omissions in her official capacity, and her official residence is in the District of Columbia.

## PARTIES

5.  Plaintiff Sierra Club ("the Club") is a not-for-profit corporation organized and existing under the laws of California, with its principal place of business located in San Francisco, California.  The Club is a national membership organization, with more than 750,000 members and supporters residing throughout the United States.  The Club's mission is to protect and enhance the quality of the natural and human environment.  Its activities include public education, advocacy, and litigation to enforce environmental laws.  The Club and its members

are greatly concerned about the effects of air pollution on human health and the environment, and have a long history of involvement in activities related to air quality. For many years the Club has conducted public education on, and advocacy for, effective and timely implementation of Clean Air Act requirements in Texas, including the filing of public comments on proposed state and EPA actions relevant to implementation of clean air standards in Texas. The Club brings this action on behalf of itself and its members.

6.      Sierra Club members live, work, recreate and conduct other activities in areas within States other than Texas where air quality is adversely impacted by emissions from sources and other emissions activities in Texas, including: a) areas where such emissions from Texas contribute significantly to nonattainment of, or interfere with maintenance of, the 1997 NAAQS for ozone, the 1997 NAAQS for PM2.5, or both; and b) areas where such emissions from Texas interfere with measures required to be included in the applicable implementation plans for ozone and PM2.5 pollution under §§ 160-169B of the Act to prevent significant deterioration of air quality or to protect visibility. Such emissions from Texas impair or threaten the health and welfare of such Sierra Club members by, among other things, prolonging and/or increasing their exposure to air pollution that endangers their health, adversely affecting outdoor views that members enjoy, and threatening damage to ecosystems that members use for recreation and aesthetic enjoyment.

7.      Sierra Club members live, work, recreate and conduct other activities in areas throughout Texas where their health and welfare are adversely affected or threatened by PM2.5 and ozone pollution. Members are exposed to and harmed by such pollution in Texas by, among other things, breathing in such pollution (which threatens their health, as further detailed below)

and by experiencing its adverse impacts on visibility, aquatic and terrestrial life, human-made materials, and other aspects of public welfare.

8. The acts and omissions of EPA complained of herein cause injury to Plaintiff and its members by delaying the adoption, submission, and approval or promulgation of plans required by the Act to implement, maintain and enforce the revised NAAQS for ozone and PM2.5 pollution. These delays cause injury to Plaintiff's members by prolonging and allowing worsening of air quality conditions that impair or threaten members' health and welfare as further described herein, and by nullifying or delaying measures mandated by the Act to protect members' health and welfare from ozone and PM2.5 pollution. The health, recreational, aesthetic, and environmental interests of Plaintiff's members have been and continue to be adversely affected by the acts and omissions of EPA alleged herein.

9. The acts and omissions of EPA alleged herein further deprive Plaintiff and its members of procedural rights and protections to which they would otherwise be entitled, including, but not limited to, the right to comment on and judicially challenge EPA action approving and/or promulgating implementation plans for Texas with respect to the 1997 ozone and PM2.5 standards.

10. For all the foregoing reasons, the failures complained of herein cause Plaintiff and its members injuries for which they have no adequate remedy at law. Granting the requested relief would redress these injuries.

11. Defendant Lisa P. Jackson is the Administrator of the United States Environmental Protection Agency, and is charged with the task of taking various actions to implement and enforce the Clean Air Act, including those actions sought herein. Defendant Jackson is sued in her official capacity, and she officially resides in Washington, D.C.

12. Defendant United States Environmental Protection Agency is the federal agency charged with implementation of the Clean Air Act.

## BACKGROUND & FACTS

### Ozone and PM2.5 Pollution

13. Ozone, the principal element of smog, is produced when precursor air pollutants—primarily volatile organic compounds ("VOCs") and nitrogen oxides ("NOx")—react in the presence of sunlight. These precursor pollutants are emitted from coal-fired power plants, factories, motor vehicles, construction equipment, oil-based paints and solvents, vehicle refueling, and other sources.

14. Ozone has profound adverse effects on human health. As EPA has recognized, acute health effects of even short-term exposure include "transient pulmonary function responses, transient respiratory symptoms, effects on exercise performance, increased airway responsiveness, increased susceptibility to respiratory infections, increased hospital admissions and emergency room visits, and transient pulmonary inflammation." National Ambient Air Quality Standard for Ozone; Final Rule, 62 Fed. Reg. 38,856, 38,859 (July 18, 1997). Comprehensive new epidemiological studies have also shown significant associations between increased ozone and short-term rates of all deaths as well as cardiovascular and respiratory deaths. Those individuals with respiratory conditions such as asthma, emphysema, and chronic bronchitis are particularly vulnerable to ozone. Children, the elderly, and those who spend substantial periods outdoors in the summertime are also particularly susceptible to ozone. Ozone also adversely affects vegetation and ecosystems, leading to reductions in agricultural crop and commercial forest yields and increased plant susceptibility to disease, pests, and harsh weather.

15. Particulate matter ("PM") is the generic term for a broad class of chemically and physically diverse substances that exist as discrete particles over a wide range of sizes. These particles originate from a variety of sources and may be emitted directly or may be formed in the atmosphere by transformations of gaseous emissions such as sulfur oxides ("SOx"), NOx, and VOCs. PM2.5 is particulate matter with a diameter of less than 2.5 microns. Sources of such PM2.5 include fossil fuel combustion, smelting processes, car and truck traffic, and construction and agricultural operations.

16. EPA has reported a wide range of adverse health effects associated with ambient PM2.5, including increased hospital admissions and emergency room visits for heart and lung disease, increased respiratory symptoms and disease, decreased lung function, and premature deaths. Elevated concentrations of PM2.5 also impair visibility, thereby reducing an individual's sense of well-being where they live and work, and in places where they enjoy recreational opportunities, such as parks and wilderness areas. Subpopulations that appear to be at greater risk to adverse health effects from PM2.5 pollution include individuals with respiratory and cardiovascular disease, the elderly, children, and children and adults with asthma.

### Clean Air Act NAAQS and Implementation Requirements

17. The Act establishes a comprehensive scheme "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

18. As one of its central features, the Act requires the Administrator to set NAAQS for certain air pollutants. 42 U.S.C. § 7409(a). Under the Act, the Administrator must set primary NAAQS for those pollutants at levels that will protect the public health with an adequate margin of safety, *id.* § 7409(b)(1), and secondary NAAQS at levels that will "protect the public

welfare from any known or anticipated adverse affects associated with the presence of those pollutants in the ambient air." *Id*. § 7409(b)(2).

19.     On July 18, 1997, the Administrator promulgated revised NAAQS for small particulates (*i.e.*, particulate matter with a diameter smaller than 2.5 microns), National Ambient Air Quality Standards for Particulate Matter; Final Rule, 62 Fed. Reg. 38,652,856 (July 18, 1997) ("1997 PM2.5 NAAQS"), and eight-hour ozone, 62 Fed. Reg. at 38,856 ("1997 ozone NAAQS") (*i.e.*, ozone concentrations averaged over an eight-hour period). These NAAQS were premised on extensive scientific evidence—including numerous human clinical studies and epidemiological studies—showing that PM2.5 and ozone levels allowed by the previous, less-protective NAAQS are associated with various adverse health effects such as those enumerated above.

20.     Section 110(a)(1) of the Act requires each State to adopt and submit to the Administrator a SIP providing for the implementation, maintenance, and enforcement of any NAAQS within three years of its promulgation or revision. 42 U.S.C. § 7410(a)(1).

21.     Pursuant to § 110(a)(2) of the Act, the SIP must, among other things: provide for an establishment and operation of systems to monitor and analyze data on ambient air quality; include enforceable emission limitations and other control measures, means or techniques as may be appropriate; provide for authority to abate pollution from sources contributing to an imminent and substantial endangerment to public health or welfare; provide necessary assurances that the state will have adequate personnel, funding and authority to carry out the plan, and meet requirements of the Act relating to prevention of significant deterioration of air quality and visibility protection. 42 U.S.C. § 7410(a)(2).

22. The SIP must also prohibit any emissions activity within the State which will contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any national primary or secondary ambient air quality standard, or interfere with measures required to be included in the applicable implementation plan for any other State to prevent significant deterioration of air quality or protect visibility under part C, Title I of the Act. 42 U.S.C. § 7410(a)(2)(D)(i).

23. Under § 110(c)(1), if EPA determines that a State has failed to submit a SIP within the established three-year deadline or that a State has submitted an incomplete SIP, the Act requires EPA to promulgate a FIP for the State within two years of such determination, unless the State submits and EPA approves the required SIP before the lapse of that two-year deadline. 42 U.S.C. § 7410(c)(1).

24. Pursuant to § 110(k)(1) of the Act, the Administrator must also determine within specified time frames whether a submitted SIP is "complete" – *i.e.*, whether the submission meets the minimum criteria promulgated under § 110(k)(1)(A) of the Act. If the Administrator does not make this completeness determination within six months, the SIP or SIP revision is deemed complete by operation of law. 42 U.S.C. § 7410(K)(1)(B). Within 12 months after a SIP submission is found or deemed to be complete pursuant to § 110(k)(1)(B) of the Act, the Administrator must act on the submission in accordance with § 110(k)(2),(3) of the Act. Specifically, the Administrator must take one of the following actions (collectively referred to as "approval/disapproval actions"): approve the SIP as a whole; disapprove the SIP as a whole; or approve the SIP in part and disapprove it in part. 42 U.S.C. § 7410(k)(2),(3).

## Failure to Implement the 1997 PM2.5 and Ozone NAAQS
## in Texas as Required by the Act

25.     Pursuant to the Act's provisions set forth above, within three years of promulgation of the 1997 PM2.5 and ozone NAAQS, each State (including Texas) was required to adopt and submit the SIPs mandated by § 110(a) of the Act to implement, maintain, and enforce those NAAQS.  The Administrator published the 1997 PM2.5 and ozone NAAQS on July 18, 1997 with an effective date of September 16, 1997.  The Act therefore required states to submit the PM2.5 and ozone SIPs required by § 110(a) not later than July 18, 2000.  In the alternative, if the SIP submittal deadline is measured from the effective date of the 1997 PM2.5 and ozone NAAQS, the deadline for such submittals was not later than September 16, 2000.

26.     On April 25, 2005, EPA published a finding that every State, including Texas, had failed to submit a SIP satisfying the interstate pollution requirements of section § 110(a)(2)(D)(i) for the 1997 PM2.5 and ozone NAAQS.  At that time, EPA acknowledged that its finding triggered, pursuant to § 110(c)(1)(A), a two-year deadline by which it was required to promulgate FIPs that satisfied the requirements of § 110(a)(2)(D)(i) for each State except those that submitted a SIP that was approved by EPA prior to the expiration of that two-year period.  The effective date of EPA's finding was May 25, 2005.

27.     Though two years have passed since EPA's April 25, 2005 finding (and since the May 25, 2005 effective date of that finding), EPA has neither approved a Texas SIP submission nor promulgated a FIP for Texas in accordance with the requirements of section 110(a)(2)(D)(i) with respect to either the 1997 PM2.5 and ozone NAAQS as required by § 110(c)(1)(A).  Although EPA's Clean Air Interstate Rule ("CAIR") and actions to implement it purported to address requirements of § 110(a)(2)(D)(i)(I) for some states, the D.C. Circuit invalidated that

rule in *North Carolina v. EPA*, 531 F.3d 896, amended, 550 F.3d 1176 (D.C. Cir. 2008). Because the *North Carolina* Court found CAIR inadequate to satisfy the requirements of § 110(a)(2)(D)(i)(I), neither CAIR nor any actions taken to implement it (including any states' SIPs that relied on CAIR to satisfy the requirements of § 110(a)(2)(D)(i)(I)) are adequate to meet the requirements of § 110(a)(2)(D)(i)(I).  Furthermore, CAIR did not even purport to address the requirements of § 110(a)(2)(D)(i)(II).  Accordingly , EPA's obligation to issue a FIP for Texas satisfying the requirements of § 110(a)(2)(D)(i) with respect to the 1997 PM2.5 and ozone NAAQS remains unfulfilled.

28. On March 27, 2008, EPA published a finding under § 110(k)(1)(B) of the Act that Texas had failed to submit a complete SIP to address the requirements of § 110(a)(2) (other than those concerning interstate transport under § 110(a)(2)(D)) for the 1997 ozone NAAQS. Completeness Findings for Section 110(a) State Implementation Plans for the 8-hour Ozone NAAQS, 73 Fed. Reg. 16,205, 16,207 (Mar. 27, 2008).  At that time, EPA acknowledged that its finding triggered, pursuant to § 110(c)(1)(A), a two-year deadline by which it was required to promulgate a FIP for Texas meeting the requirements of § 110(a) with respect to the 1997 ozone NAAQS unless Texas submitted and EPA approved an adequate SIP prior to the expiration of that two-year period.

29. Though more than two years have passed since EPA's March 27, 2008 finding (and since the April 28, 2008 effective date of that finding), EPA has neither approved a Texas § 110(a)(2) SIP submission with respect to the 1997 ozone NAAQS nor promulgated a FIP for Texas satisfies the requirements of Section 110(a)(2) of the Act.

30. On October 22, 2008, EPA published a finding under § 110(k)(1)(B) of the Act that Texas had submitted a complete SIP to address the requirements of § 110(a)(2) (other than

those concerning interstate transport under § 110(a)(2)(D)) for the 1997 PM2.5 NAAQS. Completeness Findings for Section 110(a) State Implementation Plans Pertaining to the Fine Particulate Matter (PM2.5) NAAQS, 73 Fed. Reg. 62,902, 62,905 (Oct. 22, 2008). Upon determining that Texas had submitted a complete SIP, EPA was required by § 110(k)(2) of the Act to take final approval/disapproval action under § 110(k)(3) of the Act within 12 months (*i.e.* by October 22, 2009).

31.  Though more than 12 months have passed since EPA's determination that Texas had submitted a complete SIP addressing the requirements of § 110(a)(2) (other than those concerning interstate transport under § 110(a)(2)(D)) for the 1997 PM2.5 NAAQS, EPA has failed to take any final approval/disapproval action as required by § 110(k)(3).

### FIRST CLAIM FOR RELIEF
### Failure to Promulgate an Interstate Transport FIP for the State of Texas

32.  Plaintiff hereby incorporates all previous paragraphs by reference.

33.  The Administrator has failed to fulfill her duty under § 110(c)(1) of the Act to promulgate, within the now-expired two-year deadline specified in § 110(c)(1), a FIP for the State of Texas that meets the requirements of § 110(a)(2)(D)(i) of the Act for the 1997 PM2.5 and ozone NAAQS.

34.  The Administrator's failure to timely promulgate a FIP for Texas that satisfies § 110(a)(2)(D)(i) with respect to the 1997 PM2.5 and ozone NAAQS as required by § 110(c)(1) of the Act constitutes failure to perform an act or duty that is not discretionary with the Administrator within the meaning of 42 U.S.C. § 7604(a)(2). Plaintiff is informed and believes that EPA's omissions complained of herein will continue unless enjoined by order of this Court.

## SECOND CLAIM FOR RELIEF
### Failure to Promulgate an Ozone FIP for the State of Texas

35. Plaintiff hereby incorporates all previous paragraphs by reference.

36. The Administrator has failed to fulfill her duty under § 110(c)(1) of the Act to promulgate, within the now-expired two-year deadline specified in § 110(c)(1), a FIP for the State of Texas that meets the requirements of § 110(a)(2) with respect to the 1997 ozone NAAQS.

37. The Administrator's failure to timely promulgate a FIP for Texas that satisfies § 110(a)(2) with respect to the 1997 ozone NAAQS as required by § 110(c)(1) of the Act constitutes failure to perform an act or duty that is not discretionary with the Administrator within the meaning of 42 U.S.C. § 7604(a)(2).  Plaintiff is informed and believes that EPA's omissions complained of herein will continue unless enjoined by order of this Court.

## THIRD CLAIM FOR RELIEF
### Failure to Take Final Approval/Disapproval Action on Texas's PM2.5 SIP

38. Plaintiff hereby incorporates all previous paragraphs by reference.

39. The Administrator has further failed to fulfill her duty under § 110(k)(2) of the Act to take final approval/disapproval action pursuant to § 110(k)(3) on the SIP that Texas has submitted for implementation of the 1997 PM2.5 NAAQS within the now-expired 12 month deadline specified in § 110(k)(2).

40. The Administrator's failure to take such final approval/disapproval action constitutes failure to perform an act or duty that is not discretionary with the Administrator within the meaning of 42 U.S.C. § 7604(a)(2).  Plaintiff is informed and believes that EPA's omissions complained of herein will continue unless enjoined by order of this Court.

## RELIEF REQUESTED

41. WHEREFORE, Plaintiff prays that this Court:

(1) Declare that EPA's failures to act as complained of herein constitute failures to perform nondiscretionary duties required by 42 U.S.C. § 7410(c)(1) and 42 U.S.C. § 7410(k) within the meaning of the Clean Air Act § 304(a)(2), 42 U.S.C. § 7604(a)(2);

(2) Preliminarily and permanently enjoin the Administrator from continuing to violate the above-described nondiscretionary duties;

(3) Order the Administrator to complete all actions required by 42 U.S.C. § 7410(c)(1) forthwith;

(4) Order the Administrator to complete all actions required by 42 U.S.C. § 7410(k) forthwith.

(5) Award Plaintiff its reasonable costs of litigation, including attorneys' fees, pursuant to 42 U.S.C. § 7604(d);

(6) Retain jurisdiction over this action to ensure compliance with the Court's orders; and

(7) Grant such other relief as the Court deems just and proper.

DATED: this 14th day of September, 2010.

Respectfully submitted,

_____
KHUSHI K. DESAI
D.C. Bar No. 984119
DAVID S. BARON
D.C. Bar No. 464222
EARTHJUSTICE
1625 Massachusetts Avenue NW, Suite 702
Washington, DC 20036-2212
Phone: (202) 667-4500
Fax: (202) 667-2356

*Counsel for Plaintiff*